<u>**FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:  :  CHAPTER 13

Beverly Curry,  :

  :  CASE NO.: 12-26201

          Debtor.  :

  :  **<u>OPINION</u>**

**FILED**
JAMES J. WALDRON, CLERK

**May 21, 2013**
U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: <u>/s/ Nelson Dos Santos,</u>
Deputy

**Before:** **HON. NOVALYN L. WINFIELD**

<u>**A P P E A R A N C E S :**</u>

Marc P. Feldman, Esq.
440 Speedwell Avenue
Morris Plains, NJ 07950
Attorney for Beverly Curry

Dolores Portis
4 George Street
Morristown, NJ 07960
Pro Se

This matter is before the court for determination of whether the purchaser of a tax sale certificate holds a "tax claim" pursuant to § 511 of the Bankruptcy Code. As set forth below, the court concludes that a purchaser of a tax sale certificate holds a tax claim and is entitled to the interest rate on that claim as provided under applicable nonbankruptcy law.

## JURISDICTION

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on September 18, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## BACKGROUND

Beverly Curry ("Debtor") filed a voluntary Chapter 13 petition on June 26, 2012 (the "Petition Date"). The Debtor owns real property located at 26 Prospect Street, Morristown, New Jersey (the "Property") as a tenant in common with her sister.

On June 16, 2010, the Tax Collector for the town of Morristown (the "Morristown Tax Collector" or "Tax Collector") conducted a tax sale pursuant to N.J.S.A. §§ 54:5–19 *et seq.*, to collect unpaid taxes and sewer charges that accrued on the Debtor's Property in 2009. Delores Portis ("Ms. Portis") was the successful bidder, acquiring a tax sale certificate by (i) paying the 2009 taxes and sewer charges totaling $12,074.55, (ii) paying the Tax Collector a bid premium of $6,800.00, and (iii) agreeing to a zero percent interest rate on the tax sale certificate.[1]

---

[1] An auction of municipal liens under the New Jersey Tax Law begins with a bidder bidding the amount of the unpaid taxes with interest, starting at 18%. If the bidding progresses, the next bidder offers to pay the unpaid taxes with a lower rate of interest (e.g., 17%). If the interest rate is bid down to zero percent, bidders then bid by offering

Thereafter, Ms. Portis paid all subsequent tax and sewer charges for the Property in 2010, 2011, and through June of 2012.

Ms. Portis filed a secured proof of claim in the Debtor's Chapter 13 case in the amount of $43,553.27 ("Claim No. 8"), citing "unpaid delinquent taxes" as a basis for the claim and asserting an interest rate of 18%. Appended to Claim No. 8 are various receipts for the taxes and sewer charges Ms. Portis paid in 2010, 2011 and 2012. Also attached is the Tax Sale Certificate and the receipt for its purchase. Claim No. 8 was thereafter amended to state a secured claim of $50,323.27, also with an interest rate of 18% ("Claim No. 9"). Unfortunately, no documentation was attached to Claim No. 9, and, as such, the basis for the increased claim is unknown.

The Debtor's initial Chapter 13 Plan did not provide for Ms. Portis's claim. The Debtor's amended Chapter 13 Plan (the "Amended Plan") proposes to pay the claim in the amount of $43,400.28 at an interest rate of 4.25% (comprised of 3.25% prime rate + 1%). The Debtor's interest rate calculation reflects the Debtor's view of the applicable market rate of interest. Ms. Portis objects to the Amended Plan on the basis that she is the holder of a "tax claim" within the scope of § 511 and that an interest rate of 18% applies to her claim.

## DISCUSSION

Congress enacted Bankruptcy Code ("Code") § 511 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Pertinent to the matter at hand, § 511(a) provides:

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the

---

a premium that they are willing to pay in excess of the unpaid taxes. *See In re Princeton Office Park, L.P.*, 423 B.R. 795, 798 Note 2 (Bankr. D.N.J. 2010) aff'd *In re Princeton Office Park, L.P.* Civil No. 10–3021.

> allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a).

The House Report that accompanied BAPCPA explained the need for § 511(a) as follows:

> Under current law, there is no uniform rate of interest applicable to tax claims. As a result, varying standards have been used to determine the applicable rate. Section 704 of the Act amends the Bankruptcy Code to add section 511 for the purpose of simplifying the interest rate calculation. It provides that for all tax claims (federal, state, and local), including administrative expense taxes, the interest rate shall be determined in accordance with applicable nonbankruptcy law.

H.R. Report No. 109-31 at 101 (2005).

Unfortunately the Code does not define the term "tax claim" in either § 511 or in § 101. It is evident from reading both the House Report and the statute that a governmental unit seeking payment of unpaid taxes is entitled to an interest rate determined under nonbankruptcy law. "What is not immediately clear from the statute is whether a third-party creditor who pays the debtor's taxes continues to hold a 'tax claim.'" *In re Kizzee-Jordan*, 626 F.3d 239, 243 (5th Cir. 2010).

There is divergent authority in the District of New Jersey as to whether the purchaser of a tax sale certificate holds a "tax claim" under § 511 of the Code. One approach holds that upon the purchase of a tax sale certificate, the municipality's tax claim is satisfied and extinguished. *In re Princeton Office Park, L.P.,* 423 B.R. 795, 804–06 (Bankr. D.N.J. 2010); *In re Burch,* No. 10–11360, 2010 WL 2889520 *2–4 (Bankr. D.N.J. July 15, 2010). As a result, the tax sale certificate holder who has paid the municipality does not hold a tax claim, but rather has the right to be reimbursed for the monies paid on behalf of property owner, which right is secured by a lien on the property. *In re Princeton Office Park*, 423 B.R. at 804; *In re Burch*, 2010 WL 2889520 at *5.

The other approach does not find that a tax claim is satisfied and extinguished by a third party's payment of the taxes. Rather, the only change is the party to whom the taxes are owed. *See In re Kopec,* 473 B.R. 597, 599 (Bankr. D.N.J. 2012). Further, this approach places significance on Congress' use of the term "creditor" in § 511 rather than the term "governmental units" used in other Code sections, demonstrating a legislative intent that the term "tax claim" "was intended to be broader than a debt owed to a taxing authority for unpaid taxes, and thus can encompass a third-party holder of a tax sale certificate." *Id*. at 600. This court finds the approach taken in *In re Kopec* more persuasive than that adopted in *In re Princeton Office Park* and *In re Burch.*

As a preliminary matter, the court finds that it is appropriate to give significant weight to the fact that in requiring that the interest payable on a tax be calculated at a rate determined by nonbankruptcy law, Congress conferred this benefit on creditors rather than solely governmental units. Both the term "creditor" and the term "governmental unit" are defined in the Code.[2] Congress certainly must be presumed to know the Code definition of both terms, and to have intended the breadth of the statute by its choice of terms. Congress could have met the goals for enactment of § 511 by limiting its reach to the various governmental entities described in § 101(27). Instead, Congress enlarged the reach of the statute by use of the more expansive term "creditor." This strongly suggests that Congress intended that a tax claim could be held by a third party.

The court further concedes that it is necessary to look to the New Jersey Tax Sale law to determine whether a tax sale certificate purchaser holds a tax claim. As noted in *Princeton*

---

[2] Under § 101(10) the term "creditor" is defined in pertinent part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Under § 101(27), "governmental unit" is defined to mean "the United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. §§ 101(10), (27).

*Office Park*, property interests and incidental rights acquired are determined by state law. *In re Princeton Office Park*, 423 B.R. at 804 (citing *Butner v. U.S.,* 440 U.S. 48, 55 1979). However, the court does not agree that a tax sale certificate purchaser has not acquired both the tax debt and the tax lien when it pays the taxes, interest and costs to the municipality at the conclusion of an auction authorized by the Tax Sale Law.

The court concedes that there is no explicit language in any section of the Tax Sale law that assigns the tax debt and the tax lien to a tax sale certificate purchaser. However, like the court in *Kopec* and *Kizee-Jordan*, this court is unable to determine how a lien continues to exist if the underlying debt has been satisfied. As the court in *Kopec* observed, "if the tax debt is extinguished when the municipality receives its payment from the third party purchaser, then it calls into question the validity of the tax sale certificate because there is no debt to support it." *In re Kopec*, 473 B.R. at 600. Notably, New Jersey courts construing the Tax Sale Law have determined that the lien interest of the taxing authority is conveyed to the purchaser of a tax sale certificate. *Savage v. Weissman,* 355 N.J. Super 429, 436 (App. Div. 2002); *Township of Jefferson v. Block 447A, Lot 10,* 228 N.J. Super. 1, 4 (App. Div. 1988)(citing to *Manning v. Kasdin,* 97 N.J. Super. 406, 417 (App. Div 1988)). As the purpose of a lien is to secure payment of a debt, logically the debt owed to the taxing authority is conveyed as well.

This conclusion is also supported by the underlying purpose of the statute and the specific provisions by which its purpose is met. Under N.J.S.A. § 54:5–3 the Tax Sale Law is described as remedial legislation and the statute instructs that it "be liberally construed to effectuate the remedial objectives thereof." It has been stated that "the public policy in this State is to encourage tax sale foreclosures so as to assist municipalities in the collection of delinquent taxes." *Lonsk v. Pennefather*, 168 N.J. Super. 178, 182 (App. Div. 1979). Importantly, as described in the various provisions of the Tax Sale Law set out in the following paragraphs, the

6

tax authority maintains an active role in the sale process, through its conclusion, either by redemption or foreclosure.

When the property owner fails to pay property taxes or other municipal assessments on a property, a first priority lien is created for the amount due, plus interest penalties and costs. N.J.S.A. § 54:5–6 – 54:5–9.  When the lien remains in arrears the tax collector is required to "enforce the lien by selling the property in the manner set forth" by the Tax Sale Law.  N.J.S.A. § 54:5–19.  To sell the property, the taxing authority must give notice of the time and place of sale, the property description and the total amount due computed to the date of the tax sale. N.J.S.A. § 54:5–25.  The sale is made in fee, to such person as will purchase the property at the lowest rate of interest.  N.J.S.A. § 54:5–32.  When a sale is made the lien passes with the title to the purchaser, and if there is a defect in the sale, the lien is continued if the sale is set aside. N.J.S.A. § 54:5–42.  Significantly, N.J.S.A. § 54:5–43 provides that: "If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and all his interest in the tax, assessment or other charges and in the municipal lien therefore, and the municipality may readvertise and sell if the municipality lien remains in force." N.J.S.A. § 54:5–43.

The officer holding the sale is required to deliver to the purchaser a certificate of sale that, *inter alia*, describes the property sold, gives the total amount paid by the purchaser, itemizing each component of the amount paid, and providing the rate of redemption for which it sold, and the date when the right to redeem will expire.  N.J.S.A. § 54:5–46.  The parties permitted by statute to redeem the property may do so at any time before the right to redeem expires, and may request from the tax collector a calculation of the amount needed to redeem. N.J.S.A. § 54:5–54.  All redemptions must be made through the tax collector's office unless otherwise permitted by court order or bankruptcy law. N.J.S.A. § 54:5–54.1.  If the property

7

owner redeems the tax sale certificate, she is entitled to either cancellation of the tax sale certificate or issuance of a certificate of redemption. N.J.S.A. § 54:5–53.2; N.J.S.A. 54:5–55. Alternatively, if not redeemed within the statutory two year period, the holder of the tax sale certificate may commence a foreclosure action to bar the property owner's right of redemption. N.J.S.A. 54:5–86.

These provisions of the Tax Sale Law make it evident that the process created by the statute has but one goal - the collection of taxes. The collection may ultimately occur through redemption of a tax sale certificate or foreclosure of a tax certificate by a municipality or a third party, but every step in the process is guided by the purpose of tax collection. Additionally, the court agrees with *Kopec* that N.J.S.A. § 54:4–67(c) provides another strong indicator that a holder of a tax sale certificate holds a tax claim cognizable under § 511. In defining a tax delinquency, the statute provides that the property remains delinquent until all unpaid taxes, including subsequent taxes, and liens, with interest have been satisfied, and further provides that "the delinquency shall remain notwithstanding the issuance of a certificate of sale. . . ." N.J.S.A. § 54:4–67(c); *Kopec*, 473 B.R. at 601–02. Accordingly, by virtue of holding the tax sale certificate and satisfying delinquent taxes in subsequent years, Ms. Portis holds a tax claim under Code § 511.

A. Interest Rate Applicable to Portis Claim

i. The Tax Sale Certificate

Ms. Portis asserts that she is entitled to the tax statute's default interest rate of 18% on the Tax Sale Certificate. This position is not consistent with the applicable statute. The Tax Sale Certificate explicitly provides that the sale is subject to redemption on repayment of the amount of sale, together with interest at the rate of 0.00% per annum from the date of sale, plus costs

8

permitted by statute. This statement on the face of the Tax Sale Certificate comports with N.J.S.A. § 54:5–58 which provides in relevant part:

> The amount required to redeem within 10 days from and including the date of sale, unless a tax sale certificate has been duly issued during the 10-day period, shall be the sum paid at the sale, with interest from the date of the sale at the rate of redemption for which the property was sold. After 10 days from the date of the sale including the date of sale as the first day, or after issuance of the tax sale certificate during the 10 day period, the amount required for redemption shall be that amount plus the expenses incurred by the purchaser as hereinafter provided, and subsequent municipal liens, as provided in sections 54:5–59 and 54:5–60 of this Title.

N.J.S.A. § 54:5–58.

Accordingly, the proof of claim must be amended to reflect an interest rate of 0% on the Tax Sale Certificate.

      ii.    Subsequent Tax and Sewer Payments

Because Ms. Portis is the holder of a "tax claim," the amount of interest to be charged must be determined by applicable non-bankruptcy law. *See* 11 U.S.C. § 511. According to N.J.S.A. § 54:4–67 the rate cannot exceed 8% on the first $1,500.00 and an 18% statutory interest rate applies to delinquencies in excess of the first $1,500.00. These are the rates Ms. Portis may apply to her claim.

  B.  The Premium

Ms. Portis may not include the $6,800 premium she paid to the Tax Collector as part of the proof of claim. According to N.J.S.A § 54:5–33, reimbursement of a premium must be obtained from the Tax Collector. N.J.S.A. § 54:5–33 provides in pertinent part:

> Any premium payment shall be held by the collector and returned to the purchaser of the fee if and when redemption is made. If redemption is not made within five years from the date of sale the

9

>premium payment shall be turned over to the treasurer of the municipality and become a part of the funds of the municipality.

N.J.S.A. § 54:5–33.

The statute does not make return of the premium an obligation of the property owner. This conclusion is also supported by N.J.S.A. § 54:5–58 which outlines redemption requirements and specifically identifies distinct expenses incurred by the purchaser. Notably, N.J.S.A. § 54:5–58 does not reference the premium as an expense incurred by the purchaser. Accordingly, it cannot constitute part of Ms. Portis's claim.

## **CONCLUSION**

The court finds that Ms. Portis holds a tax claim under Code § 511 based on the Tax Sale Certificate she acquired and the subsequent taxes and charges she paid in 2010, 2011 and 2012. Further, her proof of claim must be amended to conform with thisopinion, and she is granted thirty (30) days from the date of this opinion to file an amended proof of claim.

Dated: May 21, 2013                    ____/S/_____
                                       NOVALYN L. WINFIELD
                                       United States Bankruptcy Judge